**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| LECESTER GWIN, JR., | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | *   CIVIL ACTION NO. 15-00463-WS-B |
| | * |
| NANCY BERRYHILL,[1] | * |
| Acting Commissioner of Social | * |
| Security, | * |
| | * |
|     Defendant. | * |

**REPORT AND RECOMMENDATION**

Plaintiff Lecester Gwin, Jr. (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* This action was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   <u>Procedural History</u>

Plaintiff protectively filed his application for benefits on July 18, 2012, alleging disability beginning July 5, 2012, based on "[right] thalamic hemorrhage [with] interventricular extensions" (*i.e.*, a stroke) and "early mild hydrocephalus." (Tr. 152, 156).[2]   Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Renee Blackmon Hagler (hereinafter "ALJ") on January 22, 2014.  (<u>Id.</u> at 34-58).  Plaintiff attended the hearing with his counsel and provided testimony related to his claims.  (<u>Id.</u> at 34, 38).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (<u>Id.</u> at 53). On March 24, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (<u>Id.</u> at 21).  The Appeals Council denied Plaintiff's request for review on August 14, 2015.  (<u>Id.</u> at 1-2).  Therefore, the ALJ's decision dated March 24, 2014, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  Oral argument was conducted on December 7, 2016 (Doc. 24), and the parties agree that this case is now ripe for judicial review and is

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF, not the page numbers assigned by the Agency.

properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

1. **Whether the ALJ erred in failing to give controlling weight to the opinions of Plaintiff's treating physician, Dr. Karen Millender, M.D.?**

2. **Whether substantial evidence supports the Plaintiff's RFC and whether the ALJ erred in failing to include Plaintiff's mental impairment in the RFC?**

## III.  Factual Background

Plaintiff was born on February 21, 1968, and was forty-five years of age at the time of his administrative hearing on January 22, 2014.  (Tr. 38, 152).  Plaintiff graduated from high school and has one year of college.  (Id. at 39).

Plaintiff last worked as a server in 2012.  (Id. at 40, 157).  He also has past relevant work as a general laborer installing pool tables.  (Id. at 41).  At the administrative hearing, Plaintiff testified that he cannot work due to his anxiety/depression, high blood pressure, and double vision. (Id. at 43).

## IV. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct

legal standards were applied.[3]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V.   Statutory And Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to

---

[3] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the

claimant's age, education and work history. Id. Once a
claimant meets this burden, it becomes the Commissioner's burden
to prove at the fifth step that the claimant is capable of
engaging in another kind of substantial gainful employment which
exists in significant numbers in the national economy, given the
claimant's residual functional capacity, age, education, and
work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir.
1985). If the Commissioner can demonstrate that there are such
jobs the claimant can perform, the claimant must prove inability
to perform those jobs in order to be found disabled. Jones v.
Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v.
Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v.
Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI. Discussion

As noted supra, Plaintiff argues that the ALJ erred in
assigning "little weight" to the opinions of his treating
physician, Dr. Karen Millender, M.D., the consultative examiner,
Dr. Celtin Robertson, M.D., and the State Agency reviewer. (Tr.
5-6). Having reviewed the record at length, the Court finds
that Plaintiff's argument is without merit.

The record reflects that Plaintiff had a stroke on July 5,
2012, and was hospitalized for one week during which he
underwent physical therapy. (Id. at 278). He was discharged in
stable condition. (Id.). Following his hospital stay,

Plaintiff began seeing Dr. Karen Millender, M.D., for treatment of his hypertension and anxiety. (Id. at 307). Four months later, on November 9, 2012, Dr. Millender completed a Symptoms Assessment Form indicating that she had treated Plaintiff for "status post CVA secondary to right basal ganglia intraparenchymal hemorrhage (stroke), hypertension, and history of cocaine abuse." (Id. at 290). Dr. Millender noted that Plaintiff "intermittently" feels "off balance," suffers from ataxia (lack of muscle coordination), ambulates with a four-prong cane, and has double vision. (Id.). Based on these symptoms, Dr. Millender opined that physical activity would greatly increase Plaintiff's symptoms and cause distraction or total abandonment of tasks and that Plaintiff would be unable to engage in any form of gainful activity. (Id.).

As Plaintiff points out, the ALJ assigned "little weight" to Dr. Millender's opinions in the Symptoms Assessment Form. In assigning said weight, the ALJ explained that Dr. Millender's opinions were based on Plaintiff's condition a mere four months after his stroke and that Dr. Millender's subsequent treatment records, as well as other provider's treatment records, were inconsistent with Dr. Millender's opinions. The record confirms that Dr. Millender first treated Plaintiff on July 25, 2012, when Plaintiff presented for a follow up examination following a stroke on July 5, 2012. (Id. at 307-09). At that time,

7

Plaintiff reported a long history of untreated hypertension and cocaine abuse. (Id.). Plaintiff's examination revealed high blood pressure and left sided weakness. (Id. at 309). Dr. Millender placed Plaintiff on medication for high blood pressure, instructed him to cease use of cocaine, and referred him for physical therapy. (Id.).

The following month, on August 16, 2012, Dr. Millender noted that Plaintiff's musculoskeletal, respiratory, and cardiovascular examination findings were normal and that he had normal range of motion, normal muscle strength (5/5), and stability in all extremities, with no pain or swelling. (Id. at 303-05). Plaintiff's psychological examination was also normal. (Id.). Although Dr. Millender noted that Plaintiff was still experiencing high blood pressure and dizziness, depression, and gait disturbance (id. at 303-04), those findings are not noted in the subsequent treatment records.

In the months following Plaintiff's stroke, Dr. Millender's treatment records reflect that Plaintiff's condition improved significantly. Indeed, the treatment records dated October 18, 2012, note that Plaintiff presented for a check up for hypertension and back pain, and that his physical examination revealed normal blood pressure, normal range of motion, normal muscle strength and stability in all extremities with no pain and no swelling, normal respiratory and cardiovascular findings,

normal abdomen, and normal psychological findings. (Id. at 300-02). The only positive finding during that visit was double vision without dizziness or headache. (Id. at 301).

Likewise, Dr. Millender's treatment records dated November 26, 2012, document that Plaintiff had "regained much of his lost power in left arm and hand;" that his physical examination was "normal" with respect to his respiratory system, abdomen, and musculoskeletal system, including normal range of motion, 5/5 strength in his right extremities, 4/5 strength in his left extremities, intact sensation, and no swelling; that his neurological and psychological findings were normal; and that his double vision had not worsened. (Id. at 297-98). The only complaint was pain in his shoulder and neck. (Id. at 298). Dr. Millender's treatment plan consisted of prescribing medication for hypertension and anxiety and recommending Tylenol for shoulder pain. (Id.). As the ALJ found, this evidence confirms that Dr. Millender's own treatment records are inconsistent with the severity of limitations expressed in her November 9, 2012, Symptoms Assessment Form.

In addition to being inconsistent with her own treatment records, Dr. Millender's opinions are inconsistent with other medical evidence in the record, including a CT scan of Plaintiff's brain taken on July 31, 2012, two weeks after his stroke, which showed that the recent intraventricular hemorrhage

had "resolved."  (Id. at 227).  A chest x-ray taken on that date was also "normal."  (Id. at 242).  In addition, following Plaintiff's complaints of right sided abdominal pain on November 9, 2012, the same date as Dr. Millender's opinion, a CT scan was taken which showed "normal" chest, abdomen, and pelvis, with the exception of mild diverticulitis and mild degenerative changes in the spine.  (Id. at 329).  Plaintiff's physical examination on that date was also normal, with no neurological or psychological deficits.  (Id. at 332).

In addition, as the ALJ found, consultative examiner, Dr. Celtin Robertson, M.D., examined Plaintiff on January 26, 2013, six months after Plaintiff's stroke, and found that all of his symptoms had resolved except his double vision.[4]  (Id. at 312). Plaintiff's blood pressure was normal.  (Id. at 313).  Dr. Robertson noted that Plaintiff takes care of his own personal needs, prepares his own meals, and does his own chores (including dishes and laundry).  (Id. at 312).  In addition, Dr. Robertson documented that Plaintiff walked without a cane, got on and off the table without difficulty, had a normal gait (but careful due to double vision),[5] was able to heel toe walk, squat

---

[4] Dr. Robertson noted that Plaintiff's previous left arm weakness had "completely resolved."  (Tr. 312).

[5] Dr. Robertson noted that Plaintiff used a cane to "help him with reassurance just in case he has to avoid falling."  (Tr. 314).

and rise, had 5/5 muscle strength in upper and lower extremities, was able to grip and hold large and small objects securely, intact sensation. (Id. at 312-14). Dr. Robertson opined that Plaintiff would have difficulty walking, lifting, carrying, and handling due to his double vision, but could sit and stand without limitation. (Id. at 315).

In addition, Plaintiff's treatment records from Franklin Primary Health dated October 22, 2013, reflect that Plaintiff's blood pressure was normal, that the residual weakness in his left arm was "improved," and his physical and psychiatric examination findings were otherwise normal. (Id. at 422-23).

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4

(11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician.  Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).  An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"  Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)).  "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources."  Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported

by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

Based on the evidence detailed above, the Court finds that the ALJ had good cause to discredit the opinions of Dr. Millender set forth in the November 9, 2012, Symptoms Assessment Form, as those opinions are inconsistent with the substantial evidence in the case. Thus, Plaintiff's argument that the ALJ erred in discrediting the opinions of his treating physician fails.

Likewise, Plaintiff's argument that the ALJ erred in giving "little weight" to the opinion of consultative examiner, Dr. Robertson, is unpersuasive. Contrary to Plaintiff's argument, the record shows that the ALJ gave "some weight" (not "little weight") to the Dr. Robertson's opinion that Plaintiff has some limitation in lifting and carrying due to his double vision. In fact, the ALJ explained that he considered Dr. Robertson's opinion and incorporated it into the RFC. (Id. at 26-27). Also, as discussed herein, the ALJ relied heavily on Dr.

13

Robertson's examination findings. (Id. at 26-27). For these reasons, Plaintiff's argument that the ALJ erred in giving "little weight" to Dr. Robertson's opinion fails.

The Court notes that Plaintiff is correct that the ALJ gave "little weight" to the opinion of the State Agency reviewer that Plaintiff could perform "medium" work. However, Plaintiff's argument that this constitutes error is misplaced given that the ALJ explained that the evidence suggested that Plaintiff was *more* limited than the State Agency reviewer found; thus, the opinion was not entitled to significant weight. (Id. at 26).

The Court also rejects Plaintiff's argument that the ALJ erred in failing to include limitations in the RFC for his mental impairment (anxiety). As Plaintiff points out, the ALJ found his anxiety to be a severe impairment. However, the ALJ found, and Plaintiff's medical records confirm, that he routinely had "normal" psychological examination findings and had no treatment other than prescription medication by his primary care physician. (Id. at 214, 293, 298, 302, 305, 309, 342, 347, 351, 357, 374, 396, 415, 423). In addition, on September 10, 2013, Plaintiff went to the emergency room with complaints of dizziness and described his anxiety as "mild." (Id. at 357). Similarly, Plaintiff testified that his anxiety causes his heart to flutter, but he stated that, if he takes his medication the first thing in the morning, it prevents the

14

attack, and if he waits to take his medication, it takes about fifteen minutes to work. (Id. at 50-51). He also testified that the medication causes headaches, but they are relieved with Tylenol. (Id. at 44-45).

In addition, in his report to the Agency, Plaintiff stated that he does not handle stress or changes in routine well; however, he can follow written instructions with assistance and spoken instructions very well, and he gets along with authority figures. (Id. at 171-72). He can add, subtract, multiply, and divide, make change, pay bills, and manage his banking on his own. (Id. at 39-40). He takes care of his own personal needs, cooks, cleans, has a drivers license, and goes to church and other frequent outings about once every three days. (Id. at 47-49).

In her decision, the ALJ found, based on the VE's testimony, that Plaintiff can perform three *unskilled*, sedentary jobs: "assembler of small products," "order clerk," and "information clerk." (Id. at 28, 56). The substantial evidence detailed above supports the ALJ's finding that Plaintiff can perform "unskilled" work despite his mild anxiety. C.f., Taylor v. Astrue, 2012 U.S. Dist. LEXIS 11307, *25-26, 2012 WL 294532, *9 (D. Md. Jan. 31, 2012) (ALJ did not err by failing to make a more detailed evaluation of claimant's mental RFC where ALJ gave careful consideration to all the evidence concerning Plaintiff's

alleged affective disorder and found that it could not reasonably be expected to produce any disabling limitations, and adequately accommodated claimant's mild to moderate limitations by limiting Plaintiff to unskilled work) (citing cases). Although Plaintiff is correct that the ALJ in this case did not expressly include a limitation to "unskilled" work in her RFC assessment, such a finding is implicit in the ALJ's finding that Plaintiff can perform only "unskilled" jobs. (Id. at 28).

Even assuming, *arguendo*, that the ALJ erred in not expressly including a limitation to "unskilled" work in the RFC, such an error would be harmless in this case given that the ALJ limited Plaintiff's work to unskilled jobs, and Plaintiff has not shown any limitations caused by his anxiety that exceed the requirements of unskilled work. See Battle v. Astrue, 243 Fed. Appx. 514, 522 (11th Cir. 2007) (unpublished) (errors are harmless if they do not prejudice the claimant).

Finally, Plaintiff argues that the ALJ erred in finding that he has the residual functional capacity to perform a range of sedentary work, with the following restrictions: Plaintiff should "never climb ladders or scaffolds. He is limited to avoiding ordinary hazards in the workplace (ex: boxes on floors, doors ajar, etc.) due to poor vision. [He] should never work at unprotected heights. He is limited to occasional exposure to extreme heat and cold." (Tr. 24-25; Doc. 13 at 3). The

Commissioner counters that substantial evidence supports the ALJ's RFC assessment. (Doc. 20 at 5).

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet his burden in this case.

In support of his argument that substantial evidence does not support the ALJ's RFC, Plaintiff points out that the ALJ found that he has the severe impairments of essential hypertension, double vision due to a prior stroke, and generalized anxiety (Tr. 23), and that notwithstanding these impairments, Plaintiff can still perform sedentary work with the

stated restrictions. (Doc. 13 at 3). The undersigned finds that the ALJ's RFC is supported by substantial evidence. In formulating Plaintiff's RFC, the ALJ discussed in detail the medical evidence and observed that while Plaintiff has a history of stoke, the treatment records show that his symptoms resolved, with the exception of double vision, that by January 2013, Plaintiff's muscle strength measured 5/5 in his upper and lower extremities, that while Plaintiff used a cane, it was due to his double vision and not as a result of a disturbance in gait, and that Plaintiff could care for his personal needs and perform household chores such as doing laundry, ironing and making the bed. Additionally, the ALJ specifically took into account Plaintiff's double vision in limiting him from working around or near ordinary hazards, unprotected heights, ladders, ropes or scaffolds. The ALJ also limited Plaintiff to sedentary work to account for his asserted physical limitations. Based on the totality of the record, the Court finds that substantial evidence supports the ALJ's RFC for a range of sedentary work, with the stated restrictions, and that said restrictions fully accommodate Plaintiff's physical and mental impairments. The Court further finds that substantial evidence supports the ALJ's determination of weight to be given to the expert opinions in this case. For these reasons, Plaintiff's claims are without merit.

VII.  <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED.**

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must

identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

 **DONE** this **23rd** day of **February, 2017.**

                                       **/s/ SONJA F. BIVINS**
                              **UNITED STATES MAGISTRATE JUDGE**